2016 IL App (1st) 150640

No. 1-15-0640

Fifth Division
June 30, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 05 CR 4102 |
| | ) | |
| STEPHEN HENRY, | ) | The Honorable |
| | ) | William Timothy O'Brien, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a bench trial, defendant Stephen Henry was convicted of one count of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2002)), one count of aggravated battery with a firearm (720 ILCS 5/12-4.2 (West 2002)), and one count of the unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2002)), all resulting from one April 2004 incident. After hearing factors in aggravation and mitigation, the trial court sentenced defendant to 24 years in the Illinois Department of Corrections (IDOC). On direct appeal, defendant contested the sufficiency of the identification evidence at trial, arguing that the State failed to prove beyond a reasonable doubt that he was the shooter. Defendant

argued that the identification of the only eyewitness was tainted by the witness having viewed defendant's picture multiple times on a website prior to participating in a photo array and lineup. We affirmed. *People v. Henry*, No. 1-06-2600 (2010) (unpublished order pursuant to Supreme Court Rule 23).

¶ 2    On this postconviction appeal, defendant claims that the trial court erred by dismissing his petition at the second stage, because he made a substantial showing that his trial counsel was ineffective for failing to investigate and call two alibi witnesses at trial. For the following reasons, we affirm.

¶ 3    BACKGROUND

¶ 4    I. Pretrial Proceedings

¶ 5    At a pretrial appearance on April 26, 2005, defendant's trial counsel[1] advised the trial court: "I am meeting with a potential alibi witness with regards to this matter, Judge. I am going to ask for one final status."

¶ 6    At the next pretrial appearance on September 21, 2005, defendant's trial counsel informed the trial court:

"DEFENSE COUNSEL: Judge, we have one witness we can't find. We will be filing an answer with regard to this. It's going to be an alibi defense.

And I don't have a full list of every witness we intend on calling. So I was going to ask for a short status to file my answer in that regard."

¶ 7    At a pretrial appearance on October 14, 2005, defendant's trial counsel advised the trial court:

---

[1]Defendant's trial counsel was privately retained.

"DEFENSE COUNSEL: This is here for my answer today. I have told the State about two of our witnesses; a tentative potential affirmative defense with regard to this. There is one witness that needs to be interviewed.

However, my biggest dilemma is, I have Kenard Gray who is in the Navy. He is going to be there for another five or six weeks. I don't have the exact date he will be back in Chicago.

I was going to ask for November 2nd as a status. I can give the exact times I will have him available."

¶ 8 The trial court allowed a continuance, and at the next appearance on November 2, 2005, defendant's trial counsel informed the trial court:

"DEFENSE COUNSEL: Judge, in this matter discovery is complete with it. I have interviewed several of the witnesses with regard to this.

My investigator was supposed to have taken photos and given me a report, along with some assistance, which I do not have in my possession yet."

¶ 9 On November 21, 2005, defendant's trial counsel advised the trial court: "Judge, I have some outstanding discovery for the State which is not complete yet. I think we will be able to set it for trial after the next date, providing—I am sure we will have it."

¶ 10 On December 20, 2005, defendant's trial counsel filed an answer to the State's motion for pretrial discovery, in which defendant's trial counsel asserted an affirmative defense of alibi and listed three potential witnesses: (1) Kenard Gray; (2) John Byrne, the private investigator; and (3) Ian Ramsey.

¶ 11    On April 10, 2016, at a pretrial appearance, the State informed the trial court: "[Defendant's counsel] was going to get me a little more information regarding the defendant's alibi."

¶ 12    Prior to commencing trial on May 23, 2006, the trial court confirmed with defendant on the record that defendant had signed a jury waiver voluntarily, and that no one had coerced him into doing so.

¶ 13                                II. Evidence at Trial

¶ 14    On direct appeal, this court described the evidence at trial, as follows:

"George Olivos testified for the State as the only eyewitness to the April 2004 incident. He testified that in February of 2004 he was employed as a reggae disc jockey at a bar called 'The Note.' One evening while working, he was approached by a group of approximately ten men. He recognized one as Albert Harris, a music promoter with whom Olivos had previously worked. A confrontation ensued when the group told Olivos to leave and remove his equipment. He did not leave, and the group including Harris eventually left.

On the evening of April 16, 2004, Olivos was working as a bouncer at a bar called 'Leila Jane's.' His job was to check identifications and not admit underage individuals. Olivos testified that[,] at around midnight, he observed Harris standing across the street from the bar, talking on his cell phone. At approximately 1:00 am, he observed a man walking towards the bar whom he later identified as defendant.

Defendant approached Olivos and asked if there was a cover charge to enter the bar. Olivos answered that there was no cover charge, but proper identification was required. Defendant then reached towards his back, grabbed a gun, and rammed it

4

into Olivos' chest. Defendant then re-cocked the gun and a bullet flew from its chamber. Olivos, who was not struck by the bullet, jumped back and ran into the bar. Olivos then heard at least three additional gun shots.

Olivos testified that he attended 'reggae night' at a venue called 'Lava Lounge' on April 21, 2004, four days after the shooting. When he observed Albert Harris there, he telephoned the police. Olivos also testified that he viewed a photo array on November 21, 2004 and a physical lineup on January 30, 2005. He identified defendant on both occasions.

On cross examination, Olivos testified that he observed defendant during his approach to the bar for approximately five to six seconds, and one to two seconds during their conversation. He also testified that he viewed defendant's photo on Harris' Dancehall 101 website multiple times before participating in the photo array or lineup. Olivos did not inform police that he had identified the offender from the website.

Daniel Bryan testified for the State. He was seated near the door of the bar during the incident and was struck in the knee with a stray bullet, but did not observe the identity of the offender.

Police Officer James Pera testified for the State that he was first to arrive at the scene of the shooting. He testified that he viewed the red mark on Olivos' chest where Olivos claimed he was struck with the gun. He testified that the area around the bar was well lit and Olivos did not appear to be intoxicated. He also testified to the physical description Olivos provided him the night of the shooting. According to Officer Pera, Olivos described the offender as a black male with a Jamaican accent,

approximately 24 to 28 years of age, 5'10" in height, weighing 170 pounds, with brown eyes, short black hair, and a dark complexion. Olivos claimed that the offender had a two to three inch scar above his right eye, possibly a thin goatee, and was wearing a baseball cap, a black shirt with writing on it, and jeans. Officer Pera testified that four spent shell casings and one unfired bullet were recovered from the scene. They were admitted into evidence and he identified them during trial.

At trial, the parties stipulated that defendant's appearance was the same at trial as it was in April of 2004. At trial, defendant weighed approximately 230 pounds with a medium complexion, no facial hair, and a one inch scar above his left eye.

Police Officer Brian Finnegan, employed as a firearms instructor for the Chicago Police Department, testified for the State as a firearms expert. Officer Finnegan opined that the casings and bullet recovered from the scene of the shooting came from a semi-automatic pistol due to the extractor marks on the shells. He also opined that jamming a semi-automatic pistol into someone's chest could cause the pistol to misfire. When that happens, the shooter can cause the gun to fire again by pulling on the slide and ejecting the round that had previously been in the chamber.

Detective Ed Heerdt testified for the State that during his investigation on the evening of the shooting, Olivos reported the February 2004 incident between himself and Harris. Detective Heerdt also testified that he interviewed Harris the evening of April 21, 2004[,] at 'Lava Lounge' after receiving a phone call from Olivos. Detective Heerdt later caused Harris' cell phone records to be subpoenaed. At trial, the parties stipulated that the records showed multiple cell phone calls from defendant to Harris, including three calls on the night of the shooting, April 16, 2004, 29 calls

on April 17, 2004, and one call on April 18, 2004. Detective Heerdt also testified that Olivos identified defendant's photo in a photo array 'without any hesitation.'

Police Officer Richard Landgraff testified for the State that he arrested defendant on January 25, 2005. He was present when Olivos viewed a lineup on January 30, 2005 in which Olivos 'took less than a second to identify' defendant." *Henry*, No. 1-06-2600, slip order at *2-4.

¶ 15                                        III. Conviction, Sentencing, and Appeal

¶ 16        After the State rested, the trial court denied defendant's motion for a directed finding. After the close of evidence on May 23, 2006, defendant did not physically return to court. The proceedings continued and the trial court revoked defendant's bond and issued a warrant for his arrest. During closing arguments, defendant's trial counsel argued that Olivos' identification of defendant was unreliable and left a reasonable doubt as to defendant's guilt because, first, Olivos had viewed defendant's picture multiple times on a website prior to participating in the photo array and lineup. Second, although Olivos viewed defendant's picture multiple times after the shooting, he failed to call the police to report defendant. Third, there were significant discrepancies between Olivos' description of the shooter and defendant's appearance; and, fourth, the encounter between Olivos and the shooter was too short in duration and the area was poorly lit for Olivos to have made an accurate identification.

¶ 17        On June 19, 2006, the trial court found defendant guilty of one count of attempted first degree murder of Olivos under sections 8-4(a) and 9-1(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2002)), one count of aggravated battery with a firearm of Bryan under section 12-4.2 of the Code (720 ILCS 5/12-4.2 (West 2002)),

and one count of the unlawful use of a weapon by a felon under section 24-1.1(a) of the Code (720 ILCS 5/24-1.1(a) (West 2002)). The trial court merged the findings of guilt as to aggravated battery and unlawful use of a weapon into the attempted first degree murder conviction. After considering factors in mitigation and aggravation, the trial court sentenced defendant to 24 years in IDOC. Defendant was subsequently arrested on the warrant on July 10, 2009, and is now serving the custodial portion of his sentence. On direct appeal, this court affirmed defendant's conviction and sentence. *Henry*, No. 1-06-2600.

¶ 18                                  IV. Postconviction Proceedings

¶ 19            On February 7, 2011, defendant, with newly retained private counsel, filed a petition for postconviction relief pursuant to section 122-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/122-1 (West 2010)).[2] In his petition, defendant argued that he was deprived of his constitutional rights because his trial counsel, whom defendant had also privately retained, was ineffective. Specifically, defendant claimed that he had "produced" two alibi witnesses to his trial counsel who would have testified to his presence elsewhere at the time of the crime, but that his trial counsel never called these witnesses to testify concerning defendant's whereabouts. The petition stated that defendant's conviction rested on the eyewitness testimony of one witness for the State, and he claimed that the testimony of these two alibi witnesses would have changed the outcome of his trial. The petition further claimed that defendant's trial counsel had refused to allow defendant's request for a trial by jury. Lastly, the petition stated that defendant would file an amended petition to more specifically set forth these allegations.

---

[2]The petition came before a judge who was not the judge who had presided over defendant's trial.

¶ 20          On March 2, 2012, defendant filed an amended petition for postconviction relief. In this amended petition, defendant claimed that, prior to trial, he had "produced four alibi witnesses to his trial counsel who would testify that on the date and time of the shooting the defendant was not present at the scene of the crime." The amended petition named these four witnesses as: (1) Kenard Grey, (2) Ian Ramsey, (3) Bernie Ulysse, and (4) Kenyatta Smoot. Defendant further claimed that he had informed his trial counsel of the fact that he had disclosed these witnesses to Chicago police detectives who were investigating the incident. Nevertheless, the petition alleged that trial counsel never contacted these witnesses and never called them to testify about their knowledge of defendant's whereabouts at the time of the shooting.

¶ 21          Defendant also filed his own signed affidavit, in which he certified the truth of all allegations in the amended petition. Defendant also claimed that "during the pendency of his case" he had informed his trial counsel of "the names and contact information for witnesses who could provide alibi testimony for [his] case." Defendant claimed that his trial counsel informed him that he "did not contact [defendant's] witnesses because they were not necessary, as the Cook County State's Attorney 'had no case' against [defendant]."

¶ 22          On July 20, 2012, the State filed a motion to dismiss defendant's petition for postconviction relief. The State argued that defendant's petition should be dismissed because (1) unsupported conclusory allegations were insufficient to require an evidentiary hearing, and (2) the record directly refuted defendant's claims that trial counsel refused to allow his request of a jury trial and failed to investigate an alibi defense. The State conceded, however, that defendant's trial counsel did not present a written affirmative defense of alibi at trial.

¶ 23     On February 8, 2013, defendant filed an addendum to his petition for postconviction relief. The addendum stated that defendant's postconviction counsel had attempted to locate, contact, and interview the four alibi witnesses named in the petition for postconviction relief, two of who were not residing in the State of Illinois. The addendum further stated that defendant's postconviction counsel had located and interviewed three of the four witnesses. Defendant attached the affidavits of: (1) Bernie Ulysse, (2) Kenyata Smoot, and (3) Kenard Gray.

¶ 24     In his affidavit, signed on December 11, 2012, Bernie Ulysse averred that he presently resided in Florida, and had known defendant as a friend for more than 20 years. He further stated:

> "In the early evening hours of April 16, 2004, I was on the south side of Chicago at approximately 6700 S. Yates, for a memorial celebration following the funeral of a friend who had recently passed away. At this time I am not certain of the exact time I arrived, nor the exact location of the memorial celebration.
>
> [Defendant] was also at the funeral and memorial celebration.
>
> I remained at the memorial celebration till approximately 3:00 AM the following morning, and at that time, [defendant] was still at the memorial celebration.
>
> I do not recall seeing [defendant] leaving the memorial celebration during the time period that I was there.
>
> Until recently, I have never been contacted by any attorney associated with [defendant's] attempt [*sic*] murder case."

¶ 25    In her affidavit, signed on December 10, 2012, Kenyata Smoot averred that she presently resided in Chicago, and had known defendant for more than 10 years. She further stated:

"On the evening of April 16, 2004, I was in the vicinity of 7000 S. Yates in Chicago, Illinois, for a memorial celebration following the funeral of a friend who had recently passed away. At this time I am not certain of the exact location of the memorial celebration.

[Defendant] was also at the funeral and memorial celebration.

I remained at the memorial celebration till approximately 10 PM, and at that time, [defendant] was still at the location.

Until recently, I have never been contacted by any attorney associated with [defendant's] attempt [*sic*] murder case.

I have had an opportunity to read the attached Motion for Postconviction Relief and certify that the allegations contained within are true and accurate to the best of my knowledge."

¶ 26    In his affidavit, signed on February 7, 2013, Kenard Gray averred that he presently resided in Chicago and had known defendant as a friend for more than 10 years. He further stated:

"In the early evening hours of April 16, 2004, I was on the south side of Chicago, Illinois, at approximately 6700 S. Yates, for a memorial celebration following the funeral of a friend who had recently passed away. At this time I am not certain of the exact time I arrived, or the exact location of the memorial celebration.

I drove to the memorial celebration with [defendant].

11

"I remained at the memorial celebration until after 2:00 AM the following morning, and at that time, [defendant] was still at the memorial celebration with me.

I do not recall seeing [defendant] leaving the memorial celebration during the time period that I was there."

¶ 27    On October 18, 2013, the State filed a supplemental motion to dismiss defendant's petition for postconviction relief. The State objected to defendant's addendum, arguing that it was generally improper in light of defendant's flight from trial. The State also supplemented its arguments from its original motion to dismiss, arguing that, even with the affidavits from his addendum, defendant failed to make a substantial showing of a constitutional violation. Furthermore, the State presented a new argument that defendant had forfeited his postconviction claims by not raising them on direct appeal.

¶ 28    On January 31, 2014, defendant filed a response to the State's motion to dismiss. Defendant argued: (1) that he did not forfeit his right to assert a constitutional violation of his right to effective assistance of counsel by failing to participate in the underlying trial; (2) that he correctly brought his claim for ineffective assistance of counsel in his postconviction proceedings rather than on direct appeal; and (3) that he was entitled to an evidentiary hearing on the issue of ineffective assistance of counsel.

¶ 29    The postconviction court granted the State's motion to dismiss on October 3, 2014, thereby denying defendant a third-stage evidentiary hearing. The court found, first, that defendant's claim regarding his trial counsel's refusal to allow his request for a jury trial was meritless because the record indicated that defendant voluntarily chose to sign a jury waiver. The court also dismissed defendant's claims of ineffective assistance of counsel regarding the

alibi witnesses, calling defendant's petition a "disingenuous attack." The postconviction court explained its ruling:

"It seems to the court that–well, first of all, the defendant voluntarily absented himself from the proceedings. And, by doing that, he gave up his right to testify; he gave up his right to present an alibi defense, if he wanted; and, more importantly, he gave up assisting his lawyer.

His lawyer continued to operate without him, argued vigorously for a finding of not guilty. And, basically, the defendant abandoned his counsel at that point and now claims that his counsel was ineffective.

He files a very scant petition for postconviction relief. It's not accompanied by affidavits, supporting affidavits. There are no specifics to this alleged alibi defense, and it's only until the State begins to challenge that the defendant starts to flesh out what this whole alibi was. And it is still devoid of specifics. There's nothing there.

One of the witnesses that is suggested, Ian Ramsey, there's still no affidavit on file for that person. In fact, current counsel tried to locate this person, and P-C counsel wasn't able to find this person. Defendant still, I think, has still not provided any specifics concerning what the alibi is.

And the affidavits that were presented were basically: We were at a memorial service for a friend. And it doesn't say where the memorial service was. It doesn't say who the friend was. And, frankly, the times are nebulous at best. So in kind of looking as to what the affidavits were, the Court is not surprised that an alibi defense was not pursued in this matter.

As to whether or not the counsel was ineffective, again, *** [the trial counsel] employed an investigator. He interviewed witnesses that were brought to him. He did all that. He put it down in an answer. He paid an investigator to find them. And then the defendant abandons him. You know, [trial counsel] proceeds, he argues, and he remains on the case and the defense [*sic*] wasn't.

It is not as if the defendant all of a sudden, seeing the error of his ways, decides to come in and turn himself in. This does not become ripe until he gets rearrested and is brought to court.

There is no evidence that [trial counsel] was ineffective. And the Court feels that there is no substantial showing of a constitutional violation in this case. And so the State's motion to dismiss will be granted."

¶ 30 Defendant filed a timely notice of appeal on October 24, 2014, and this appeal followed.

¶ 31 ANALYSIS

¶ 32 On appeal, defendant argues that he made a substantial showing of a constitutional violation and that his postconviction petition should proceed to the third stage for an evidentiary hearing. For the following reasons, we affirm the postconviction trial court's dismissal of his petition at the second stage.

¶ 33 I.  The Post-Conviction Hearing Act

¶ 34 The Post-Conviction Hearing Act (Act) "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009); see 725 ILCS 5/122-1 *et seq.* (West 2010).

A postconviction proceeding is not a direct appeal but rather a collateral attack on a prior judgment. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). To proceed, pursuant to the Act, a defendant files a petition in the trial court in which the original proceeding took place. *Hodges,* 234 Ill. 2d at 9. Any postconviction proceeding not involving the death penalty contains three distinct stages. *Hodges*, 234 Ill. 2d at 10.

¶ 35    At the first stage, section 122-2 of the Act requires that a postconviction petition must, among other things, " 'clearly set forth the respects in which [defendant's] constitutional rights were violated.' " *Hodges*, 234 Ill. 2d at 9 (quoting 725 ILCS 5/122-2 (West 2006)). A defendant, at the first stage, need only present a limited amount of detail in the petition. *Hodges*, 234 Ill. 2d at 9. Since most petitions are drafted at this stage by *pro se* defendants, the threshold for survival is low and a defendant is only required to allege enough facts to make out a claim that shows the "gist" of a constitutional claim. *Hodges*, 234 Ill. 2d at 9; see *People v. Porter*, 122 Ill. 2d 64, 74 (1988) (stating that only a "gist" of a constitutional claim is needed at this stage). The trial court independently reviews the petition and determines whether "the petition is frivolous or is patently without merit" within 90 days of the filing of the petition. *Hodges*, 234 Ill. 2d at 10. If the court determines that the petition is either frivolous or patently without merit, the court dismisses the petition in a written order. *Hodges*, 234 Ill. 2d at 10; see 725 ILCS 5/122-2.1(a)(2) (West 2010). If the court does not dismiss the petition, then the petition advances to the second stage, where counsel is appointed to indigent defendants (725 ILCS 5/122-4 (West 2010)), and the State then files a motion to dismiss or an answer to the petition (725 ILCS 5/122-5 (West 2010)). *Hodges*, 234 Ill. 2d at 10-11.

¶ 36    At the second stage, the trial court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). All well-pled facts that are not rebutted by the trial record are to be taken as true. *Pendleton*, 223 Ill. 2d at 473. If no such showing is made, the petition is dismissed. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If, however, a substantial showing of a constitutional violation is shown, the petition is advanced to the third stage, where the trial court conducts an evidentiary hearing. *Edwards*, 197 Ill. 2d at 246, 258; *Pendleton*, 223 Ill. 2d at 471; see 725 ILCS 5/122-6 (West 2010).

¶ 37    At a third-stage evidentiary hearing, the defendant bears the burden of making a substantial showing of a constitutional violation. *Pendleton*, 223 Ill. 2d at 473 (citing *People v. Coleman*, 206 Ill. 2d 261, 277 (2002)). At the hearing, the trial court "may receive proof by affidavits, depositions, oral testimony, or other evidence." 725 ILCS 5/122-6 (West 2010). The court also "may order the [defendant] brought before the court." 725 ILCS 5/122-6 (West 2010).

¶ 38                            II.  Standard of Review

¶ 39    After second-stage proceedings, we review the trial court's decision under a *de novo* standard of review. *Pendleton*, 223 Ill. 2d at 473. Under a *de novo* standard of review, the reviewing court does not need to defer to the trial court's judgment or reasoning. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007). *De novo* review is completely independent of the trial court's decision. *United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008). *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 40                                III.  Ineffective Assistance of Counsel

¶ 41         Defendant claims that he received ineffective assistance of counsel based on his trial counsel's failure to investigate and call two alibi witnesses at trial.

¶ 42         The Illinois Supreme Court has held that, to determine whether a defendant was denied his or her right to effective assistance of counsel, an appellate court must apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland*)). Under *Strickland*, a defendant must prove both (1) his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness, and (2) absent these errors, there was a reasonable probability that his trial would have resulted in a different outcome. *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007) (citing *Strickland*, 466 U.S. at 687-94). To prevail, the defendant must satisfy both prongs of the *Strickland* test. *Colon*, 225 Ill. 2d at 135.

¶ 43         Under the first prong of the *Strickland* test, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness "under prevailing professional norms." *Colon*, 225 Ill. 2d at 135; *People v. Evans*, 209 Ill. 2d 194, 220 (2004). In considering whether counsel's performance was deficient, a court must indulge a strong presumption that the challenged action, or inaction, was the result of sound trial strategy. *People v. Smith*, 195 Ill. 2d 179, 188 (2000); *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 44         Under the second prong, the defendant must show that, "but for" counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. (Internal quotation marks omitted.) *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. "[A] reasonable probability that the result would have been different is a

probability sufficient to undermine confidence in the outcome–or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *Evans*, 209 Ill. 2d at 220; *Colon*, 225 Ill. 2d at 135. In other words, the defendant was prejudiced by his attorney's performance. *People v. Lacy*, 407 Ill. App. 3d 442, 457 (2011).

¶ 45    In the case at bar, the principal issue on appeal is whether or not defendant has made a substantial showing of a constitutional violation under *Strickland*. However, the parties' disagreement on the matter requires that we first discuss the issue of what effect, if any, defendant's voluntary absence during trial had on his right to effective assistance of counsel.

¶ 46                      A. Effect of Flight During Trial

¶ 47    The State argues that defendant "chose to forego" his alibi defense by voluntarily absenting himself from trial after the State rested its case. As the State points out, the postconviction court gave significant weight to defendant's absence at trial when it granted the State's motion to dismiss defendant's petition. The postconviction court reasoned that defendant surrendered certain rights when he voluntarily absented himself from trial, namely, the right to testify, the right to present an alibi defense, and the right to assist his lawyer. Agreeing with the postconviction court's assessment, the State argues that defendant's "own abandonment of his alibi defense at trial should be given consideration" by this court in determining whether or not defendant made a substantial showing of ineffective assistance.

¶ 48    In his reply brief, defendant counters that there is no legal or factual basis for arguing that he waived his right to effective assistance at trial by voluntarily absenting himself from the proceedings. Defendant cites *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), for the proposition that "the right to counsel is the right to effective assistance of counsel."

Defendant next argues that a defendant can waive the right to counsel only affirmatively and in open court after the trial court has properly admonished the defendant pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984). Because the record in this case contains no such waiver, defendant argues that he never waived his right to counsel, or his right to effective assistance of counsel. We agree.

¶ 49    While a defendant does waive certain rights by voluntarily absenting himself from trial, there is no legal basis for construing a defendant's voluntary absence as a waiver of his right to effective assistance of counsel. A criminal defendant's voluntary absence from trial may operate as a waiver of the right to be present at trial and the right to confront the witnesses against him. *People v. Cobian*, 2012 IL App (1st) 980535, ¶ 11. In the case at bar, defendant does not dispute that he waived his right to be present and to assist in his defense. Rather, defendant argues that he did not waive his right to effective assistance of counsel. As defendant correctly points out, " 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland*, 466 U.S. at 686 (quoting *McMann*, 397 U.S. at 771 n.14). Illinois Supreme Court Rule 401 (eff. July 1, 1984) prescribes the procedure for waiving counsel for any defendant charged with an offense punishable by imprisonment. Such a defendant can waive his right to counsel *only* in open court after the trial court has properly admonished him of the consequences. In the present case, the record contains no such waiver, and so defendant did not waive his right to effective assistance of counsel.

¶ 50    As defendant points out, the State cites no legal authority for its argument that defendant's absence should affect his right to effective assistance of counsel. Illinois case law has not decided this question. For instance, in *Cobian*, the defendant absented himself from trial and was convicted of murder *in absentia*. *Cobian*, 2012 IL App (1st) 980535, ¶ 3. Years

later, he was found and arrested. *Cobian*, 2012 IL App (1st) 980535, ¶ 9. On appeal, after his arrest, the defendant argued that he had received ineffective assistance of counsel at trial. *Cobian*, 2012 IL App (1st) 980535, ¶ 17. Without commenting on the defendant's absence, the appellate court applied the normal *Strickland* test for ineffective assistance of counsel, as we do here. *Cobian*, 2012 IL App (1st) 980535, ¶¶ 1, 17-19.

¶ 51     Thus, in the absence of any legal authority to the contrary, we must conclude that a defendant's voluntary absence from trial does not diminish or otherwise impact defendant's right to effective assistance of counsel.

¶ 52                    B. Substantial Showing of Ineffective Assistance

¶ 53     The remaining and principal issue on appeal is whether or not defendant has made a substantial showing of ineffective assistance of counsel, such that he is entitled to a third-stage evidentiary hearing. As noted above, a defendant must make a substantial showing that his trial counsel was both (1) objectively unreasonable and (2) that this deficiency in counsel was prejudicial. *Ward*, 371 Ill. App. 3d at 434 (citing *Strickland*, 466 U.S. at 687-94). To prevail, a defendant must satisfy both prongs of the *Strickland* test. *Colon*, 225 Ill. 2d at 135. Thus, for example, "if an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient." *People v. Graham*, 206 Ill. 2d 465, 476 (2003). We do not need to consider the remaining prong of the *Strickland* test if one prong cannot be satisfied. *Graham*, 206 Ill. 2d at 476. Because we find that defendant's trial counsel was not deficient, we need not address the issue of prejudice.

¶ 54     The State argues that defendant's trial counsel was not deficient because the record shows that trial counsel "diligently" investigated the alibi defense, employed an investigator,

and interviewed "several of the witnesses." The State argues that, despite counsel's efforts, there was no evidence that any potential witness was willing to testify at trial. The State further argues that defendant has failed to show that trial counsel's decision to forgo an alibi defense was objectively unreasonable and not trial strategy.

¶ 55       Defendant, on the other hand, argues that his trial counsel's failure to interview or call the exculpatory alibi witnesses was objectively unreasonable. Defendant counters the State's argument regarding counsel's "diligent" investigation by pointing out that the record shows only that defendant's trial counsel *told* the trial court that he had investigated the witnesses and the alibi defense. Taking the petition's allegations as true, defendant argues, we must presume that trial counsel failed to contact or interview either witness, despite the fact that defendant had provided him with their names and contact information.

¶ 56       An attorney's decision about whether or not to present a witness is generally a matter of strategy that does not support an ineffective assistance of counsel claim. *People v. Irvine*, 379 Ill. App. 3d 116, 130 (2008). Nevertheless, an attorney has a professional duty to conduct " 'reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *People v. Domagala*, 2013 IL 113668, ¶ 38 (quoting *Strickland*, 466 U.S. at 691). This duty encompasses the obligation to investigate any possible defenses. *Domagala*, 2013 IL 113668, ¶ 38. Based on the foregoing principles, defendant's trial counsel had the duty to make a reasonable investigation into defendant's alibi defense.

¶ 57       In certain circumstances, an attorney's failure to investigate witnesses may constitute objectively unreasonable assistance. *People v. Bolden*, 2014 IL App (1st) 123527, ¶ 38. For example, in *Bolden*, the defendant filed a postconviction petition alleging, in part, that his

21

trial counsel had been ineffective for failing to contact, interview, or call three witnesses. *Bolden*, 2014 IL App (1st) 123527, ¶ 30. The defendant attached affidavits from each witness. *Bolden*, 2014 IL App (1st) 123527, ¶ 32. One witness swore that she had been talking to the defendant inside a store at the time of the murder for which he was charged, thus, providing a complete alibi. *Bolden*, 2014 IL App (1st) 123527, ¶ 32. The witness swore that she had not been contacted by any attorney or investigator on behalf of the defendant until the investigator working on his postconviction petition had contacted her, years after his trial. *Bolden*, 2014 IL App (1st) 123527, ¶ 32. The other two witnesses corroborated parts of the alibi witness's account and swore that they had not been contacted by any attorney or investigator for the defendant. *Bolden*, 2014 IL App (1st) 123527, ¶¶ 33-34. While there was evidence that trial counsel had asked an investigator to interview the main alibi witness, there was no evidence to contradict the witness's assertion that no investigator or attorney had actually contacted her. *Bolden*, 2014 IL App (1st) 123527, ¶ 45. This court held that trial counsel's failure to contact the witnesses constituted an "objectively unreasonable investigation of the case." *Bolden*, 2014 IL App (1st) 123527, ¶ 46.

¶ 58    On the other hand, an attorney's decision not to call a witness is not objectively unreasonable if it was based on trial strategy. *People v. Lacy*, 407 Ill. App. 3d 442, 466-67 (2011). For example, in *Lacy*, this court held that a defendant's trial counsel was not objectively unreasonable for failing to call the defendant's aunt to testify at his trial. *Lacy*, 407 Ill. App. 3d at 466-67. The defendant's aunt submitted an affidavit stating that the defendant had been at her home for the entirety of the night on which he allegedly committed armed robbery and aggravated criminal sexual assault elsewhere. *Lacy*, 407 Ill. App. 3d at 466. The record showed that someone from trial counsel's office had talked with the

22

defendant's aunt, so trial counsel was aware of this witness and her intended testimony. *Lacy*, 407 Ill. App. 3d at 467. We reasoned that trial counsel may have reasonably concluded that the defendant's aunt would not be helpful at trial because (1) a jury might have given her testimony less weight because she was the defendant's relative and (2) certain statements in the aunt's affidavit contradicted the evidence in the case. *Lacy*, 407 Ill. App. 3d at 466-67.

¶ 59       In the present case, defendant's trial counsel was not objectively unreasonable because the record indicates that he did investigate the alibi witnesses. The record shows that defendant's trial counsel was trying to construct an alibi defense–based at least in part on Kenard Gray's testimony–for several months or longer. Defendant's trial counsel requested numerous continuances to investigate alibi witnesses; he told the trial court that he had hired an investigator; he told the trial court that he had interviewed "several of the witnesses"; and he listed an alibi defense and witnesses including Kenard Gray on a discovery answer. Defendant now implies that his trial counsel was lying to the trial court about conducting such an investigation and argues that we must take as true the affiants' statements that defendant's trial counsel never contacted them. However, the affidavits of Bernie Ulysse and Kenard Gray, which state that no "attorney" contacted them until recently, conspicuously leave open the possibility that an investigator for defendant's trial counsel contacted them and interviewed them before defendant's trial. The present case thus differs from *Bolden*, where the affiants swore that they were not contacted by either an *investigator or attorney* regarding the defendant's trial. Accordingly, we can take as true the affiants' statements that they were never contacted by defendant's trial counsel without having to assume that trial counsel was lying to the court about investigating alibi witnesses such as Kenard Gray.

¶ 60        Furthermore, defendant's trial counsel could reasonably have concluded, as a matter of trial strategy, that Bernie Ulysse and Kenard Gray would not have been helpful at trial. Unlike the affidavit of the alibi witness in *Bolden*, which provided an airtight alibi for the defendant by placing him elsewhere at the moment of the crime, the affidavits of Bernie Ulysse and Kenard Gray fall short of providing an airtight alibi. Taken together, they establish only that defendant arrived at a memorial celebration at some point on the day of the crime; that he was there "after" 2 a.m. and 3 a.m., when the affiants left; and that neither affiant could "recall" seeing him leave at any point between the early evening and when they left. The underlying crime occurred at 1 a.m. As the State points out, defendant could have committed the crime and returned in time to be at the memorial celebration when the affiants left.[3] The affidavits merely establish that the affiants did not "recall" observing defendant leave while they were there. This does not establish that defendant did not leave. Given the weaknesses in the alibi that these affidavits provide, defendant's trial counsel could reasonably have concluded, after a reasonable investigation, that foregoing an alibi defense, and instead attacking the State's identification evidence, was sound trial strategy.

¶ 61        Defendant argues that he is entitled to an evidentiary hearing under *People v. Morris*, 335 Ill. App. 3d 70 (2002). In *Morris*, a defendant alleged in his postconviction petition that he informed his trial counsel, well before trial, about three witnesses who could provide alibi

---

[3]Both affidavits state that the memorial celebration was in the vicinity of "6700 S. Yates." It is unclear whether this refers to 6700 S. Yates Ave., Chicago, IL 60617, or 6700 S. Yates Blvd., Chicago, IL 60649. The former location is approximately 16 miles from Armitage Ave. and Sheffield Ave., and approximately a 38-minute drive without traffic (Driving Directions from W. Armitage Ave. & N. Sheffield Ave., Chicago, IL 60614, to 6700 S. Yates Ave., Chicago, IL 60617, Google Maps, http://maps.google.com). The latter location is approximately 13 miles from Armitage Ave. and Sheffield Ave., and approximately a 25-minute drive without traffic (Driving Directions from W. Armitage Ave & N. Sheffield Ave, Chicago, IL 60614 to 6700 S. Yates Blvd., Chicago, IL 60649, Google Maps, http://maps.google.com). Thus, defendant could feasibly have committed the crime and driven back to either potential location of the memorial celebration before the affiants left.

testimony for him at trial. *Morris*, 335 Ill. App. 3d at 74. The defendant's trial counsel himself submitted an affidavit on behalf of the defendant's postconviction petition in which trial counsel admitted that the defendant had told him about these witnesses before trial; that he had failed to inform the State about these witnesses before trial; that he had failed to include these witnesses in a discovery response; and that, as a result of his failure to comply with discovery rules, he had been unable to call these witnesses at trial, even though two of them were present and ready to testify. *Morris*, 335 Ill. App. 3d at 80. The record also did not rebut the defendant's allegations that his trial counsel had failed to investigate the alibi defense or interview the witnesses. *Morris*, 335 Ill. App. 3d at 83. Based on these facts, the appellate court held that the defendant had satisfied the deficiency prong of *Strickland*. *Morris*, 335 Ill. App. 3d at 83.

¶ 62       The present case is distinguishable from *Morris* in several respects. First, as discussed above, the record here indicates that defendant's trial counsel did investigate an alibi defense. Second, defendant's trial counsel filed a discovery response listing an alibi defense and naming Kenard Gray as a witness. Third, while the witnesses in *Morris* were at court, willing to testify, the record in the present case does not indicate that either witness was even in Illinois; Bernie Ulysse's affidavit states that he lived in Florida in 2012, and the record shows that Kenard Gray was traveling with the Navy while defendant's trial counsel was trying to contact him. In sum, in *Morris*, the court found no evidence of trial strategy in the record to excuse the defendant's trial counsel from investigating the defendant's alibi, disclosing the witnesses or securing their testimony at trial. By contrast, the record here shows that defendant's trial counsel conducted at least some investigation into defendant's alibi, disclosed one of the witnesses and the alibi defense, and would have had reason to believe,

25

based on their potential testimony as shown in their affidavits, that calling these witnesses would not be sound trial strategy.

¶ 63    Defendant also argues that he is entitled to an evidentiary hearing under *People v. Cleveland*, 2012 IL App (1st) 101631. In *Cleveland*, a defendant was convicted of murder and attempted murder after a trial in which his attorney had presented no evidence or witnesses. *Cleveland*, 2012 IL App (1st) 101631, ¶ 13. Five witnesses submitted affidavits to support the defendant's postconviction petition, in which they swore that they had presented themselves to the defendant's trial counsel, offering exculpatory testimony. *Cleveland*, 2012 IL App (1st) 101631, ¶¶ 14, 18-19, 25-26. One witness swore she observed the crime transpire and swore that the defendant was not involved. *Cleveland*, 2012 IL App (1st) 101631, ¶ 18. Another witness swore that the defendant was at her home at the time of the crime. *Cleveland*, 2012 IL App (1st) 101631, ¶ 14. These witnesses swore that they contacted the defendant's attorney and offered their testimony, but that the attorney either never contacted them or never called them to testify. *Cleveland*, 2012 IL App (1st) 101631, ¶¶ 14, 18-19, 25-26. The appellate court held that, in the absence of any reasonable strategy in the record, "counsel's decision to call no witness when several exculpatory witnesses presented themselves, according to the affidavits, constitutes a substantial showing that his representation was objectively unreasonable." *Cleveland*, 2012 IL App (1st) 101631, ¶ 60.

¶ 64    The present case is distinguishable from *Cleveland*. First, in *Cleveland* the exculpatory witnesses had presented themselves to the defendant's attorney, and yet the attorney chose not to pursue or present their testimony. *Cleveland*, 2012 IL App (1st) 101631, ¶¶ 14, 18-19, 25-26. By contrast, in the present case, there is no evidence that either witness reached out to defendant's trial counsel, or was even physically present in Illinois.

Trial counsel told the court that he was investigating these witnesses, that he hired a private investigator, and that he interviewed several of the witnesses. The affidavits do not foreclose the possibility that the private investigator contacted and interviewed the two witnesses. Second, at least one of the witnesses in *Cleveland* positively confirmed that the defendant was not involved in the crime. *Cleveland*, 2012 IL App (1st) 101631, ¶ 18. By contrast, the affidavits of Bernie Ulysse and Kenard Gray could be consistent with defendant having committed the crime. Based on this key difference alone, defendant's trial counsel may have decided, as a matter of trial strategy, to forego offering them as alibi witnesses.

¶ 65    Thus, defendant's trial counsel was not objectively unreasonable for choosing not to call Bernie Ulysse or Kenard Gray at trial. Under *Strickland*, we must attempt to reconstruct the circumstances of counsel's challenged conduct at the time, indulging a strong presumption that counsel's behavior was reasonable under the circumstances. *Strickland*, 466 U.S. at 689. A favorable reconstruction of the circumstances shows that defendant's trial counsel conducted a reasonable investigation into defendant's alibi defense, and could have reasonably concluded that the testimony of Bernie Ulysse and Kenard Gray would not have helped at trial. "Where circumstances known to counsel at the time of his investigation do not reveal a sound basis for further inquiry in a particular area, it is not ineffective for the attorney to forgo additional investigation." *People v. Pecoraro*, 175 Ill. 2d 294, 324 (1997). The postconviction court concluded, in light of the deficiencies of the affidavits of Bernie Ulysse and Kenard Gray, that it was not surprised that defendant's trial counsel had not gone forward with an alibi defense. We agree.

27

¶ 66                                    CONCLUSION

¶ 67         Defendant has failed to make a substantial showing that he was deprived of his constitutional right to effective assistance of counsel. Indulging a strong presumption in favor of defendant's trial counsel, we find that defendant's trial counsel made a reasonable investigation into the alibi defense and alibi witnesses, and could have had sound reasons for choosing not to present this defense at trial. Accordingly, we conclude that defendant's trial counsel did not provide ineffective assistance.

¶ 68         Affirmed.